IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

---

| | |
|---|---|
| SOO LINE RAILROAD COMPANY d/b/a CANADIAN PACIFIC RAILWAY, <br><br> *Plaintiff,* <br><br> v. <br><br> BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, <br><br> *Defendant.* | Civil Action No. <br><br> FILED: MARCH 28, 2008 <br> 08CV1813          EDA <br> JUDGE DER YEGHIAYAN <br> MAGISTRATE JUDGE COX |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff Soo Line Railroad Company d/b/a Canadian Pacific Railway ("Soo") brings this action against defendant Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("BMWED") pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*

2. Plaintiff seeks a declaration of the parties' rights and obligations under the RLA in connection with ongoing negotiations and mediation over proposed changes to the parties' existing collective bargaining agreements. In particular, plaintiff seeks a declaration that the parties' collective bargaining dispute is subject to resolution exclusively through the procedures mandated by the RLA and that BMWED may not lawfully strike, picket, engage in a work stoppage or slowdown, or engage in other economic self-help in connection with the dispute.

3. Plaintiff also seeks appropriate injunctive relief to prevent an unlawful strike or other self-help by BMWED.

## PARTIES

4. Plaintiff Soo is a corporation organized and existing under the laws of the State of Minnesota, with its principal offices located at 501 Marquette Avenue South, Minneapolis, Minnesota 55402. Soo is a common carrier by railroad engaged in interstate commerce and is a "carrier" within the meaning of, and subject to, the RLA, 45 U.S.C. § 151 First, and the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101. Soo operates a railroad system in North Dakota, Minnesota, Wisconsin, Illinois, Indiana, and Michigan. Soo is a wholly owned subsidiary of Soo Line Corporation, which in turn is an indirect wholly owned subsidiary of Canadian Pacific Railway Company, a Canada corporation.

5. Defendant BMWED is an unincorporated labor organization that is a "representative" of employees within the meaning of, and subject to, the RLA, 45 U.S.C. § 151 Sixth. At all times mentioned herein, pursuant to a certification issued by the National Mediation Board ("NMB"), BMWED has represented, for purposes of collective bargaining under the RLA, persons employed by Soo in the "craft or class" of maintenance of way employees.

6. On Soo, BMWED acts through a System Division and a System Federation, each headed by a General Chairman. BMWED, through its officials and officers, regularly conducts business and acts for its members and other employees it represents in this judicial district.

## JURISDICTION AND VENUE

      7.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331, because federal questions arising under the RLA are presented.  The RLA and the Declaratory Judgment Act authorize the requested relief.

      8.      Venue is properly laid in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2).

## APPLICABLE LEGAL STANDARDS

      9.      The RLA prescribes mandatory and exclusive procedures for resolving labor disputes between railroads and their employees.  Under the RLA, collective bargaining agreements between railroads and labor unions do not, as a general matter, expire on a date certain but, rather, continue in effect until changed.  The RLA procedures governing the establishment and modification of labor agreements -- so-called "major disputes" -- are set forth in §§ 5 First, 6, and 10 of the RLA, 45 U.S.C. §§ 155 First, 156, and 160.

      10.      Under those RLA provisions, a party seeking to change "rates of pay, rules or working conditions" must serve a notice under RLA § 6 initiating bargaining (a so-called "Section 6 Notice").  If agreement is not reached, the process may continue through mediation under the auspices of the NMB pursuant to RLA § 5, 45 U.S.C. § 155 First.  If mediation is unsuccessful (and only the NMB can release the parties from mediation), the parties must consider voluntary arbitration under 45 U.S.C. § 157.  And if the dispute remains unresolved and threatens substantially to interfere with interstate commerce, the President may appoint a Presidential Emergency Board to recommend a solution, pursuant to 45 U.S.C. § 160.

      11.      Throughout the entire statutory bargaining process, the parties must maintain the status quo.  Only if agreement is not reached after the process has been exhausted do the parties become free to resort to "self-help" -- *i.e.*, the union may strike and the carrier may

unilaterally institute its proposed changes to the labor agreement. However, it is unlawful for a union to engage in a strike or other coercive self-help in aid of its bargaining demands prior to conclusion of the statutory process.

12. A district court has jurisdiction to enforce the mandatory RLA bargaining process by enjoining a union's premature strike or other coercive self-help.

13. Section 2 First of the RLA, 45 U.S.C. § 152 First, requires labor unions and the employees they represent to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

14. Labor unions are required to make affirmative efforts to ensure that the employees they represent do not engage in actions that contravene the duty imposed by § 2 First. The obligations imposed by RLA § 2 First are judicially enforceable.

## EVENTS REQUIRING RELIEF

**A.     The Dispute Over RLA Bargaining And Status Quo Obligations**

15. This case arises from BMWED's threatened violation of its obligation not to strike, picket, engage in a work stoppage or slowdown, or engage in other coercive economic self-help while the parties are in mediation over proposed changes to their labor agreements initiated by the parties' service of Section 6 Notices.

16. Soo and BMWED are parties to various labor agreements that prescribe the rates of pay, rules, and working conditions of Soo maintenance of way employees. As pertinent here, these include two agreements: (1) a basic "schedule agreement" entered into by

Soo and the Brotherhood of Maintenance of Way Employes ("BMWE") (as BMWED was then known, before it became a division of the Teamsters), effective January 1, 2000, applicable to employees working on Soo's former "Milwaukee Road" property ("the Soo Agreement (former Milwaukee Road Property)"), and (2) a basic "schedule agreement" entered into by Soo and BMWE, effective December 31, 2001, applicable to Soo's other maintenance of way employees ("the Soo Agreement").

17.     On April 7, 2005, BMWED served on Soo a Section 6 Notice proposing changes to the Soo Agreement and a separate Section 6 Notice proposing changes to the Soo Agreement (former Milwaukee Road Property).

18.     On April 18, 2005, Soo served its own Section 6 Notice on BMWED proposing its own changes to the Soo Agreement (former Milwaukee Road Property). On April 20, 2005, Soo served a Section 6 Notice on BMWED proposing changes to the Soo Agreement.

19.     Soo and BMWED engaged in concurrent negotiating sessions covering both the Section 6 Notices relating to the Soo Agreement and the Section 6 notices relating to the Soo Agreement (former Milwaukee Road Property). Negotiating sessions were held in June, September, and December 2005, and in February, March, May, and July 2006, during which the parties exchanged various bargaining proposals; but no agreement was reached.

20.     On July 13, 2006, in accordance with RLA § 5, Soo submitted the dispute over all of the Section 6 Notices to mediation before the NMB. The NMB docketed the case on July 19, 2006 as NMB Case Number A-13421 and appointed Terri D. Brown as mediator.

21. Representatives from Soo and BMWED held an initial session with the mediator in November, 2006. Mediation sessions were held in January, March, April, June, July, October, and November, 2007.

22. The parties exchanged several bargaining proposals during these mediation sessions. In October 2007, BMWED provided Soo a comprehensive proposal for modifying the labor agreements; this proposal contained several terms that are not acceptable to Soo. Soo provided BMWE with a comprehensive counterproposal dated November 6, 2007.

23. By letter to Soo dated March 10, 2008, BMWED presented the same proposal it had first furnished in October 2007, as "our final offer to settle this dispute." The union accused Soo of not making good faith efforts to resolve the dispute, and asserted that if Soo did not respond within twenty days, BMWED will consider the parties to be "at impasse" and that "further mediatory efforts" would be "fruitless."

24. Soo responded to BMWED by letter dated March 28, 2008. Soo reminded the union that only the NMB, not the parties, can declare impasse and end mediation. Soo corrected its November 6, 2007 bargaining proposal to add a particular amount to the employees' rates of pay, which BMWED had correctly observed should be added, and which Soo had inadvertently omitted. Soo further made clear to BMWED that Soo is prepared to continue to negotiate in good faith, as it has throughout the process, in an effort to reach agreement.

25. The NMB has not declared the parties to be at impasse, or released the parties from mediation. To the contrary, the parties remain in mediation over their Section 6 Notices.

26. On information and belief, BMWED intends to strike, picket, or engage in a work stoppage or slowdown or other coercive economic self-help against Soo, and to

encourage and induce Soo maintenance of way employees to participate in such strike or other self-help, to force acceptance of the union's bargaining proposals and demands even though BMWED and Soo are in mediation under the auspices of the NMB over those proposals and demands and a strike would therefore be unlawful. BMWED's unlawful purpose will be to put economic pressure on Soo in order to force the railroad to accede to the demands made in the union's Section 6 Notice and subsequent negotiating proposals.

**B.      Irreparable Harm**

27.    A strike, picket, work stoppage, slowdown, or other economic self-help by BMWED, and/or the employees it represents, against Soo will, unless restrained and enjoined, cause immediate, substantial, and irreparable injury to Soo, its customers, and the public in amounts that cannot be definitely ascertained in that, among other facts:

(a)     Such acts would delay, disrupt, and impede Soo train operations and the railroad's ability to complete shipments of merchandise and other cargo;

(b)     Disruption at one point on the Soo system will adversely affect operations in other territories served by Soo in the upper Midwestern United States, including Soo's St. Paul and Chicago service areas;

(c)     The unlawful acts will render Soo unable to continue to provide railroad transportation services to its customers and thus unable to carry out its obligations as a rail carrier engaged in interstate commerce;

(d)     The resulting interruption, curtailment or cessation of rail transportation services will cause serious and immediate disruption, and injury to customers served directly and indirectly by Soo and to those customers' customers, and will deprive various shippers and consignees, some of which do

not have practicable access to alternative modes of transportation, of essential transportation facilities;

(e) The interruption, curtailment or cessation of Soo rail services will have a disruptive effect on freight operations throughout various parts of the country, including but not limited to the interchange of freight between Soo and other carriers and will, as a consequence, severely interrupt the flow of interstate commerce and disrupt the movement of freight to and from Canada;

(f) Soo will, as a consequence of its inability to provide rail service, suffer the immediate and potentially permanent loss of customers who will be forced to turn to alternative means of transportation and competing carriers;

(g) As a further consequence of its inability to provide rail service, Soo will lose good will, be deprived of operating revenue and be unable to use and adequately maintain the property, facilities and equipment in which it has made enormous capital investments;

(h) The loss of customers and revenues may compel Soo to lay off employees, who may thereby lose their means of livelihood; and

(i) The interruption, curtailment or cessation of services on Soo also will disrupt the operation of Amtrak passenger service and METRA commuter service on trackage that is part of Soo's system.

28. The injuries that will be inflicted upon Soo by denial of the injunctive relief sought herein would be far greater than any that might be inflicted on BMWED by the granting of the relief.

**COUNT ONE**

**Claim For Declaratory And Injunctive Relief Pursuant To
Sections 5 First, 6, And 10 Of The Railway Labor Act
In Connection With Bargaining Disputes That Are In Mediation**

29.     BMWED is in mediation with Soo, under the auspices of the NMB, over the proposed changes to the Soo Agreement and the Soo Agreement (former Milwaukee Road Property) contained in the parties' Section 6 Notices.  BMWED may obtain concessions from Soo on the subjects addressed in the Section 6 Notices and negotiation proposals only by adhering to the mandatory RLA bargaining process, and BMWED is required to maintain the status quo while the parties are in mediation.  Only after first exhausting the RLA process, which it has not done, could BMWED obtain a right to strike or use other economic self-help over these bargaining disputes.

30.     The NMB has exclusive and plenary jurisdiction over the mediation process.  Only the NMB can declare an impasse and release the Soo and BMWED from mediation.  The NMB has not done so.

31.     Soo at all times has been ready, willing, and able to comply, and has complied, with the requirements of the RLA with respect to the ongoing bargaining dispute.

32.     BMWED cannot lawfully strike, picket, or engage in a work stoppage, slowdown, or other economic self-help, or encourage Soo employees to engage in a strike or other self-help, in aid of the demands in BMWED's Section 6 Notices, while the parties are in mediation over those notices.  Such conduct violates §§ 5, 6, and 10 of the RLA.

33.     Soo is entitled to a declaration that BMWED cannot strike, picket, or engage in a work stoppage, slowdown, or other economic self-help in aid of the demands in its Section 6 Notices while the parties are in mediation, and to appropriate injunctive relief.

## COUNT TWO

### Claim For Declaratory And Injunctive Relief
### Pursuant To Section 2 First Of The Railway Labor Act

34. BMWED is required by RLA § 2 First to "exercise every reasonable effort to make and maintain agreements . . . and to settle all disputes, whether arising out of the application of agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carriers and the employees thereof."

35. The use by BMWED of economic self-help in aid of bargaining proposals that are currently in mediation violates BMWED's duty under RLA § 2 First to "exert every reasonable effort" to settle disputes without interruption of rail transportation. Soo is entitled to a declaration to this effect, and to appropriate injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Soo requests that judgment be entered in its favor and against defendant BMWED, and respectfully prays that the Court:

(1) Grant judgment declaring that a strike, picket, work stoppage, slowdown, or other economic self-help by BMWED against Soo to force acceptance of bargaining demands that are currently in mediation under the auspices of the National Mediation Board violates BMWED's obligations under RLA §§ 5 First, 6, and 10, 45 U.S.C. §§ 155 First, 156, and 160;

(2) Grant judgment declaring that a strike, picket, work stoppage, slowdown, or other economic self-help by BMWED against Soo in aid of the subjects that are currently in mediation under the auspices of the National Mediation Board violates BMWED's obligations under RLA § 2 First, 45 U.S.C. § 152 First;

(3) Enter a permanent injunction enjoining BMWED and its officers, agents, servants, employees, members, and all persons acting in concert or participation with any of them, from striking, picketing, engaging in a work stoppage or slowdown, or otherwise exercising coercive self-help against Soo in connection with the parties' disputes as set forth herein, and from encouraging or inducing any other person to strike, picket, engage in a work stoppage or slowdown, or otherwise exercise coercive self-help against Soo in connection with those disputes;

(4) Grant such temporary and preliminary injunctive relief against BMWED as may be appropriate;

(5) Award plaintiff its costs and expenses, including attorneys' fees, incurred in this proceeding; and

(6) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

__/s/   Patrick S. Casey_____
James S. Whitehead
Patrick S. Casey
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

Jeffrey S. Berlin
Mark E. Martin
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8178

*Attorneys for Plaintiff Soo Line Railroad Company*

## VERIFICATION

Cathryn S. Frankenberg deposes and says that she is Assistant Vice President Labor Relations and Human Resources-U.S. for Canadian Pacific Railway, with offices at Suite 1000, 501 Marquette Ave. South, Minneapolis, Minnesota 55402; that she has read the foregoing Verified Complaint for Declaratory and Injunctive Relief and knows the contents thereof; and that the facts and allegations contained therein are true in substance and fact to the best of her knowledge, information and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28 day of March, 2008.

_____
Cathryn S. Frankenberg