IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOO LINE RAILROAD CO. <br> d/b/a CANADIAN PACIFIC RAILWAY <br> <br> Plaintiff, <br> <br> v. <br> <br> <br> BROTHERHOOD OF MAINTENANCE OF WAY <br> EMPLOYES DIVISION OF THE INTERNATIONAL <br> BROTHERHOOD OF TEAMSTERS <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 08-CV-1813 <br> ) Judge Der-Yeghiayan <br> ) Magistrate Judge Cox <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

**INTRODUCTION**

In its memorandum opposing the motion of the Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") for dismissal of the complaint in this case, plaintiff Soo Line Railroad Co. ("Soo" or "Carrier") has offered no factual basis for this Court to assert jurisdiction to adjudicate the issues raised by the Carrier. Instead the Soo vociferously asserts the reasonableness of its subjective apprehension of an actual unlawful strike by BMWED despite the absence of an actual strike or strike threat. The Carrier has entirely ignored the requirement that a plaintiff opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) has the burden of proving jurisdiction by production of competent evidence of a factual basis for jurisdiction. BMWED opening brief at 7-9.

Instead of offering actual factual support for its complaint such as an actual strike threat,

1

Soo essentially tells the Court that it really really believes that BMWED will engage in unlawful self help, and that its belief is necessarily reasonable because BMWED's history makes the Soo's fears reasonable regardless of whether they can be substantiated. What the Carrier has offered is the opinion of a declarant who says that BMWED's statements are some kind of "code" that she deciphers as illustrating an actual threat. Soo's declarant cites other supposed evidence that she interprets as indicating bad intentions (such as distribution of the Union's letter to Soo to other unions on the property who also engage in bargaining with the Carrier, and the Union's distribution of strike benefits information to members when the parties have engaged in fruitless negotiations for over three years and have not met for over half a year); and Soo's declarant refers to supposed "feedback" from unnamed officers of other unions about what they were allegedly told by unnamed BMWED officers. Finally, the Soo argues that its fears must be reasonable because of prior decisions where BMWED was found to have violated the Railway Labor Act ("RLA") [albeit in very different situations].

Because the Soo has not offered facts that would be sufficient to support jurisdiction, the Soo has not carried its burden, and BMWED's motion should therefore be granted.[1]

---

[1] In its motion to dismiss, BMWED noted that the only paragraphs in Soo's complaint that appeared to assert RLA violations were alleged "on information and belief". Soo's opposition brief and supporting declaration similarly rely on non-specific broadsides, and references to unnamed persons who supposedly heard things from other unnamed people. In its brief, the Soo responded to BMWED's objection by asserting that it is permissible for a plaintiff to present conclusory pleadings based on information and belief when the pleadings concern matters peculiarly within the knowledge of the defendant. Soo Brief at 6, n. 2, *citing Brown v Budz*, 398 F. 3d 904, 914 (7th Cir. 2005). But, while it may be permissible for a plaintiff to present a complaint on information and belief, that does not mean that such allegations can be sufficient to establish subject matter jurisdiction in response to a motion to dismiss under Rule 12(b)(1), where the plaintiff has the burden of demonstrating facts that support jurisdiction. If Soo was correct in its argument, then any party could obtain federal court jurisdiction merely by asserting that it believes that facts necessary for jurisdiction exist. Furthermore, *Brown v. Budz* is inapposite since it was a Rule 12(b)(6) case. Indeed, the Court in that case expressly relied on the principle that a plaintiff faced with motion to dismiss under Rule 12(b)(6) "does not have to 'show' anything; he

2

## **ARGUMENT**

In moving for dismissal, BMWED noted that Soo's complaint did not allege any actual act in preparation for a premature strike or any actual strike threat. BMWED further noted that the parties' exchange of correspondence, while evidence of frustration and anger on both sides, and of an actual impasse in negotiations, was not evidence of a strike action or strike threat. BMWED therefore argued that Soo's complaint is merely a request for an abstract declaration of what the law is based on potential and hypothetical events, and a request for an injunction against a possible violation of the law that may never occur. In response, Soo's brief has failed to demonstrate that it has set forth a justiciable claim over which this Court has jurisdiction under Article III of the Constitution.

Soo's brief (at 4-6) describes the history of bargaining between the parties since 2005 through the last mediation session in 2007 and then discusses the correspondence between the parties this past Spring. Soo refers to BMWED's March 10, 2008 letter (Wimmer declaration ¶6 and Ex. 1) which asserted that Soo's last proposal was not made in good faith, outlined what BMWED described as its final proposal and sought either movement in negotiations or an acknowledgment of impasse, and then said that if there was no "substantive counterproposal" within twenty days, BMWED would consider the non-response to be "an admission that we are at impasse and we will take all appropriate and lawful steps to resolve this dispute in the best interest of our members". *Id.* Soo's brief asserts that Soo had no doubt that BMWED was threatening a strike. Soo objected that BMWED did not affirmatively acknowledge an obligation to maintain

---

need only allege". 398 F. 3d at 914. By contrast, here the plaintiff has to show a factual basis for jurisdiction and is not entitled to any presumption that the facts are as alleged, or to have its allegations viewed in a light most favorable to it. As is shown below, the additional allegations of fact presented in Soo's response to BMWED's motion are insufficient for Soo to carry its burden.

the status quo while the parties are in mediation, and stated that the RLA does not "permit the union (or the railroad) to declare 'impasse'", so the Carrier "reasonably understood" the Union's letter as a strike threat. Soo Brief at 4-5. Soo argues that BMWED's letter effectively asserted that it could strike with impunity; and that the statement that BMWED viewed the parties as at impasse constituted a declaration that BMWED was free to strike. Soo Brief at 7. Unless Soo's proffer of mind-reading and subjective fears are deemed evidence, there is none to support the assertion of Federal jurisdiction.

  Of course, BMWED's March 10 letter did not actually threaten a strike or state an intent to strike or engage in other self help if Soo did not agree or did not respond constructively. Instead, the letter reviewed the long and unproductive history of the current round of bargaining, stated BMWED's view that the Soo's last proposal was not made in good faith, offered what BMWED described as its final proposal and then opined that if there was no constructive response, BMWED would view the parties as at impasse. There is no RLA violation in any of that, and Soo's brief provides no authority supporting its contention that BMWED's letter created a justiciable case.

  There is nothing illegal about BMWED opining that the Soo has not bargained in good faith. And Soo's long, angry, rhetorical and hectoring responsive letter of March 28 (Wimmer Ex. 2) was at least as negative, if not more negative, about BMWED's bargaining than was BMWED's letter about Soo's bargaining. If BMWED's accusing the Soo of lack of good faith is code for an assertion of a right to strike, is Soo's strident and accusatory response a code for assertion of a right to unilaterally implement its proposal? Obviously neither is so. Certainly, American labor laws do not create a cause of action for harsh language and bruised feelings.

  Soo has fixed on BMWED's statement that it would take the lack of a constructive

4

response from the Soo as an admission of impasse, although Soo erroneously describes BMWED's letter as a <u>declaration</u> of impasse. *See* Wimmer Ex. 1, p. 3 for actual language. Again, there is nothing unlawful in one party stating that it believes that there has been so little movement that negotiations are at impasse, or even saying that it would take the lack of movement of the other side as an acknowledgment of impasse. And Soo has cited no authority supporting its contention that a party's belief that negotiations are at impasse is evidence of an actual or threatened unlawful act. Furthermore, even if BMWED had actually said "we declare negotiations to be at an impasse", that would not create a justiciable case. Either side is free to "declare" whatever it wants, that does not mean that it is acting or preparing to act. A union could declare itself to be the representative of a group of employees but that would not make it the representative or constitute an unlawful act.

Furthermore, in accusing BMWED of disregarding or usurping the NMB's role by declaring (sic) impasse, the Soo has mischaracterized the relevant RLA provision. The NMB does not declare impasse; rather, under RLA Section 5, it makes a determination that mediation has been unsuccessful, and, as its "final required action" in the process, attempts to induce the parties to accept voluntary interest arbitration under RLA Section 7. The statute does not even use the word "impasse". And even if it did, determination of impasse, or futility of further mediation, is a subjective determination; and it has legal significance only when made by the NMB in attempting to induce acceptance of Section 7 arbitration. Accordingly, BMWED's expression of its opinion that the parties are at impasse, and its inference that Soo agrees, is not an "announcement" that BMWED considers itself free to exercise self-help. Soo Brief at 7. Instead, as BMWED's letters (Wimmer Ex. 1 and 3) stated, the Union merely attempted to persuade Soo that there is no point to further mediation and to accept, or at least not oppose, cessation of mediation and proffer of

5

arbitration from the NMB. Soo may believe that BMWED's reference to impasse was an announcement that BMWED considered itself free to exercise self help, and that "[c]ommunicating that message was the reason for BMWED's sending the letter" (Soo Brief at 7, italics deleted); but that does not make it so, and Soo's exercise in telepathy is not evidence.

Soo focuses on what it says is "threatening language" in the March 10 letter, where BMWED said that in the absence of a constructive response from the Soo, BMWED would take "all appropriate and lawful steps to resolve this dispute". Soo Brief at 8. Of course that statement did not actually threaten a strike and BMWED actually said that it would take lawful and appropriate action, thereby <u>not</u> threatening unlawful action. But Soo says that the Court should not be fooled by what BMWED actually said, and its express reference to <u>lawful</u> action and instead find this to be a threat of unlawful action. But Soo's assertion of its belief that BMWED meant something other than what it said, however frequently that belief is repeated, and however strenuously Soo says its apprehensions are reasonable, does not constitute factual support for it allegations of a strike threat, and a sufficient showing of a basis for jurisdiction.

The Soo has also referred to BMWED's May 9, 2008 letter. Soo Brief at 12 n.9. That letter rejected the Soo's accusation that the Union had disregarded the NMB, stated that the March 10 letter was an attempt to clarify BMWED's position and to either restart negotiations or induce the Carrier to acknowledge that further mediation would not likely result in an agreement so the NMB should proffer arbitration and release the parties from mediation. Wimmer Declaration Ex. 3. Soo characterized the letter as exacerbating its fears because BMWED rejected the Soo's description of the negotiations, the reasonableness of its position and Soo's description of certain aspects of the law. Soo Brief at 12 n.9. However, BMWED was under no obligation to allow Soo's inaccurate and biased description of the negotiations go undisputed. Given the

6

erroneous, rambling and accusatory content of Soo's letter, BMWED response was actually quite restrained, and perhaps most usefully noted that Soo's letter was strong evidence that the parties were indeed at impasse. BMWED said nothing that could be construed as a strike threat or as repeating or enhancing a prior strike threat.[2]

Soo has attempted to buttress its complaint by asserting that its prior concerns were "heightened" when it learned that BMWED had provided copies of its letter to other unions representing Soo employees. Soo Brief at 5, citing "feedback" attributed to unidentified officers of other unions who supposedly confirmed that they received a copy of BMWED's letter. But an allegation that BMWED shared information with other unions who bargain with Soo is not an allegation of facts supporting a claim of planned unlawful action. BMWED is free to tell other unions what is happening in its bargaining with the Soo, and this sort of exchange of information is routine on both sides. The Carrier has cited no authority suggesting that such exchange of information is an unlawful act or indication of unlawful intent. Soo apparently infers from the distribution of the letter a plan to alert other unions to a planned strike at some unspecified date, even though Soo merely claims that it was told that the other unions received what the Soo received. In any event, Soo's imaginings are not allegations of fact.

Soo also tries to make something of the fact that some BMWED members were provided information as to benefits that would be available in the event of a strike. There is of course,

---

[2] The Soo has also accused BMWED of denying its obligations under the RLA because the opening paragraph of BMWED letter described certain of the Carrier's views in Soo's thirteen page letter as specious and mythical. Soo Brief at 12 n.9. But, review of the Soo's letter shows that BMWED rejection of the basic premises of Soo's letter did not constitute denial of any legal obligation under the RLA. While BMWED disputed Soo's characterizations of the bargaining history, and of the Union's RLA obligations in responding to Soo's long and pejorative letter, there was nothing in BMWED's letter that violated the RLA or threatened non-compliance with RLA requirements.

nothing illegal about a union maintaining a strike benefits fund or providing members with information about such a fund. Furthermore, it is simply prudent for a union that has been bargaining for over three years and could be released from mediation at any time to provide information to its members about strike benefits. Surely the Soo has communicated contingency plans to its managers regarding operations in the event of a strike or lockout, but that does not mean that Soo is planning a lockout or action that would precipitate a strike.

Soo has cited statements that it has attributed to unidentified union officers who supposedly confirmed that they were told that BMWED was "planning a job action". Frankenberg Declaration pp. 6-7. However, Soo has not provided a statement from any person stating that they were told by a BMWED officer or anyone speaking for BMWED that BMWED was planning a strike. Ms. Frankenberg does not claim that any such statement was made to her; and Soo has not identified any person who supposedly heard such a statement. All that Soo has offered is the declaration of Ms. Frankenberg that some unnamed persons told her assistants that those persons had heard that BMWED was planning a strike. These assertions simply do not constitute allegations sufficient to demonstrate a factual basis for claims within the jurisdiction of this Court.[3]

---

[3] Because Soo has the burden of coming forward with factual allegations to support its claims, and because such "feedback" does not constitute actual facts sufficient under Rule 12(b)(1), it is not necessary for BMWED to attempt to refute hearsay information that has not even been attributed to identifiable individuals,. However, BMWED was able to ascertain the identity of one individual referred to by Ms. Frankenberg: the General Chairman for the American Train Dispatchers Association. Frankenberg Declaration ¶18 (iii). The ATDA General Chairman for the Soo Train Dispatchers, Gordon Smith, denies the statement made by Ms. Frankenberg. He further states that he did not speak to Ms. Frankenberg, or any member of her staff, or provide "feedback" to her or any member of her staff, saying that BMWED was or is planning a strike or other job action against Soo. Smith Declaration 4. The Smith declaration has been filed with this reply brief. Since Mr. Smith denies the statement attributed to him, and since Soo has not identified any person as purportedly hearing such a statement, there simply are no facts to support Soo's allegations on this point.

Soo further argues that its case should remain on the Court's docket because BMWED did not assuage Soo's fears by answering Soo's complaint with an express commitment not to strike. Soo Brief at 12. But BMWED had no obligation to make any such proclamation just because the Soo was concerned that BMWED might engage in an illegal strike. The RLA imposes no duty on any party to affirm that it will comply with the Statute whenever the other party expresses doubt about such compliance. The Soo has no obligation to affirmatively commit that it will not prematurely implement its proposals; and BMWED similarly has no obligation to commit not to prematurely engage in job actions. BMWED did nothing illegal, said nothing illegal and did not threaten any illegal act. Soo's initiation of litigation did not then impose on the Union a duty to forswear illegal acts that it had not committed, and did not plan to commit.

Ultimately, the Soo's argument depends on decisions in prior cases involving BMWED. Soo asserts that BMWED has allegedly declared carriers to have bargained in bad faith before and then struck in violation of the RLA, and has engaged in a number of strikes that were declared illegal, so BMWED's statement that it will take all lawful action really is a threat to take unlawful action, and that statements that would be innocuous if made by another union are actionable when made by BMWED. Soo Brief at 7-10, citing decisions in *Burlington Northern & Santa Fe Ry. v. Brotherhood of Maintenance of Way Employees,* 143 F. Supp 2d 672 (N.D. TX 2001), 286 F. 3d 803 (5th Cir. 2002); *Brotherhood of Maintenance of Way Employes v. Atchison Topeka and Santa Fe Ry.,* 840 F. Supp 1221 (N.D. Il 1993); *Grand Trunk Western R.R. Co. v. BMWED*, 497 F. 3d 568 (6th Cir. 2007). In essence, the Soo argues that because BMWED was found to have violated the RLA in certain other cases, BMWED can be presumed to be planning acts in violation of the RLA in its dispute with the Soo; and that the Court has jurisdiction over Soo's complaint until BMWED proves otherwise. But Soo cannot create Federal court jurisdiction, or

ignore principles applicable under Rule 12(b)(6) based on the identity of the defendant. Nor is there anything in the RLA, any other statute or any decision that supports the sort of presumption advocated by the Carrier.

Furthermore, the prior cases relied on by the Soo are readily distinguishable from the instant case. *Brotherhood of Maintenance of Way Employes v. Atchison Topeka and Santa Fe Ry.* did not even involve bargaining over changes in the parties' agreement, and BMWED did not allege that the carriers had failed to bargain in good faith. Additionally, in that case, BMWED engaged in informational picketing and explicitly said it would be free to strike in response to what BMWED believed was a unilateral change in agreement during the term of that agreement. 840 F. Supp at 1226. [4] Additionally, in *BMWE v. ATSF*, the Union initiated legal action against the railroads alleging that they had violated the RLA, and the railroads counter-claimed against the Union; so there was no dispute as to whether the court had jurisdiction over the case. Moreover, BMWED had made an explicit threat to strike and had engaged in informational picketing, so the question in that case was not whether BMWED might strike, but whether a strike was imminent enough to warrant an injunction.  840 F. Supp at 1236. In the cases discussed in *BNSF v. BMWE,* the Union did not engage in or threaten strikes based on allegations of bad faith bargaining or to bring about resolution of bargaining over changes in agreements. Once again, BMWED struck, or was deemed to have threatened to strike, in response to what it believed were unilateral changes in agreements during the terms of those agreements; but those disputes were held to be "minor disputes" that had to be arbitrated. 143 F. Supp 2d at 679-685.

---

[4] A union does not violate the RLA if it strikes in response to a carrier's unlawful abrogation of, or unilateral change of, the parties' agreement. *Detroit and Toledo Shore Line Railroad v. United Transp. Union*, 396 U.S. 142, 150 (1969);  *Burlington Northern v. UTU,* 862 F.2d. 1270, 1281 (7th Cir. 1988) ; *Atlanta & West Point Railroad Co. v. United Transportation Union*, 439 F.2d 73, 80 (5th Cir. 1971)

10

Contrary to the Soo's implication, those were not cases where BMWED claimed that a carrier had bargained in bad faith. To the extent that the Soo relies on *Brotherhood of Maintenance of Way Employes v. Atchison Topeka and Santa Fe Ry.* and *Burlington Northern & Santa Fe Ry. v. BMWE* as support for the proposition that a BMWED assertion that a carrier has not bargained in good faith is evidence of intent to engage in an unlawful strike, or is a prelude to an unlawful strike, the facts of those cases provide no support for that proposition.

  In *Grand Trunk Western R.R. Co. v. BMWED*, the Union did accuse the carrier of bad faith bargaining but the Union actually sought to continue negotiations to reach an agreement, and it was the carrier that refused to meet. BMWED made multiple requests for meetings which the Grand Trunk ignored, BMWED again sought a meeting but the carrier again refused unless the meeting was called by the NMB. BMWED then filed its own complaint against the carrier (itself invoking Federal court jurisdiction). When there was no response from Grand Trunk, the Union went on strike, contending that the carrier's refusal to meet violated the RLA, and rendered the carrier ineligible for an anti-strike injunction under the Norris LaGuardia Act. BMWED later offered to refrain from striking if the carrier would agree to meet, but the carrier still refused and the Court ruled that the carrier did not violate the RLA by doing so. 497 F. 3d at 570-571. While that case did involve allegations of failure of the carrier to bargain in good faith, it is the only such case cited by the Soo as part of its prediction-based argument; and it is factually distinguishable from the instant case. In any event, the one case does not represent a pattern, and it cannot possibly support Federal court jurisdiction in the absence of actual facts in support of the allegations of supposedly planned unlawful acts here.

  Oddly, the Soo also relies on the baseless lawsuit it filed last year against BMWED when the Soo also alleged that BMWED was planning to strike to bring about resolution of this dispute

11

when BMWED had not intention of doing so. *Soo Line Railroad Co. and Delaware and Hudson Ry. Co., v Brotherhood of Maintenance of Way Employees Division/IBT*, N.D. IL No. 07-CV-2202 (Exhibit B to BMWED's motion to dismiss). In that case Soo asserted on information and belief that BMWED would strike to force the Soo to accede to its demands, and to force Soo to prevent Soo from dealing with its corporate parent that was being lawfully struck by other Teamsters maintenance of way employees. Exhibit B to BMWED's motion to dismiss, Soo complaint ¶¶29-30, 44-65. Soo ultimately sought dismissal of its own complaint in that case because nothing happened, and because the end of a legal strike within Canada, against Soo's parent, meant that "plaintiffs have no basis known to them for continuing to press their claims against BMWED that are alleged in the Complaint" . Exhibit B to BMWED's motion to dismiss, Soo motion to dismiss at 5. In opposing dismissal of the instant case, Soo argues that it really was threatened with an unlawful strike last time and its lawsuit was a deterrent. Soo Brief at 10. Perhaps Soo believes that its lawsuit deterred a strike to resolve the (still) pending dispute over changes to the BMWED-Soo agreement, but BMWED never planned or threatened such a strike, there was never any evidence that BMWED had such a plan, and the unsupported (information and belief) allegations in last year's complaint are not evidence that there is a basis for this year's baseless complaint.[5]

---

[5] Soo attempts to counter BMWED's argument that Soo's opposition to dismissal of this year's complaint is inconsistent with Soo's motion to dismiss last year's complaint by asserting that the Union has advanced an inconsistent position because BMWED opposed dismissal of last year's complaint. But the Soo ignores the premise for BMWED's opposition. In Count Four of last year's complaint, the Soo had argued that the parties' agreements barred BMWED from responding to Soo's provision of assistance to its struck parent in its dispute with other Teamster maintenance of way employees (Exhibit B to BMWED motion to dismiss, Soo complaint Count Four ¶¶57-64), and BMWED believed that there was a continuing issue concerning Soo's frivolous interpretation of the parties' agreement in that regard, and that the nature of that issue was such that it would again arise and dissipate quickly, evading judicial resolution. Exhibit B to BMWED motion to dismiss, Soo motion to dismiss at 6-10 [The case was dismissed before

12

Soo might say that it does not matter whether the cases it cited are distinguishable from this one on their facts because they show that BMWED violated the RLA before, so it might do so again. But just because there were findings of some RLA violations in the past, that does not provide factual support for the claim that the Union is planning action in violation of the RLA in this dispute. Moreover, such an argument would mean that Federal court jurisdiction would not depend on actual facts or an actual controversy, but the identity of the defendant. Indeed, if this was tenable argument, it would mean that Soo could have initiated legal action at the time the parties began bargaining merely on suspicion that BMWED might violate the RLA some time during the bargaining/mediation period. But there is no authority under Article III holding that a party that has committed unlawful acts in the past can be presumed to be intending to do so again such that it may be sued in the absence of unlawful acts or actually threatened unlawful acts.[6] Thus, even if the prior cases cited by the Soo involved situations similar to this one, that history is not a basis for jurisdiction here where Soo has failed to come forward with facts that provide a basis for jurisdiction.

### IV. CONCLUSION

The Soo has failed to carry its burden of showing that it has presented a claim within the subject matter jurisdiction of this Court. Rather, it is apparent that this complaint is indeed some kind of "placeholder" in anticipation of an issue that may never arise. Because the Court can only

---

BMWED had an opportunity to file a response to Soo's motion]. In the instant case, Soo is not asserting a continuing contract interpretation claim that is disputed by BMWED as in Count Four of last year's complaint; rather Soo again asserts a strike plan in the (still) pending contract negotiations that Soo cannot support with actual facts.

[6] In a somewhat analogous context under Article III, a court does not have jurisdiction over a dispute that has been resolved and is otherwise moot unless the plaintiff shows that there is a likelihood of repetition of the action that gave rise to the case, even when there is a long history of the disputed conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-106 (1983).

adjudicate actual cases and controversies, the Court does not have subject matter jurisdiction over Soo's attempt to preemptively obtain an advisory opinion on that issue. BMWED therefore respectfully submits that the Court should grant BMWE's motion and dismiss the Soo's complaint in its entirety.

Respectfully submitted,

Of Counsel:
William A. Bon, Esq.
General Counsel
Brotherhood of Maintenance
Of Way Employes Division/IBT
20300 Civic Center Dr. # 320
Southfield, MI 48076-4169
(248) 948-1010

Richard S. Edelman
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, DC 20005
Telephone: (202) 898-1707
Facsimile: (202) 682-9726
REdelman@odsalaw.com

s/ William L. Phillips
William L. Phillips
Attorney at Law
100 N. LaSalle St. Suite 1605
Chicago, IL 60602
Telephone: (847) 644-1901
Facsimile: (312) 332-9595

July 28, 2008

bill@wlphillips.com

Attorneys for Plaintiff Brotherhood of Maintenance of Way Employes Division/IBT

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2008, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this document through the Court's system.

s/ William L. Phillips

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOO LINE RAILROAD CO.<br>d/b/a CANADIAN PACIFIC RAILWAY<br><br>Plaintiff,<br><br>v.<br>Yeghiayan<br><br><br>BROTHERHOOD OF MAINTENANCE OF WAY<br>EMPLOYES DIVISION OF THE INTERNATIONAL<br>BROTHERHOOD OF TEAMSTERS<br><br>Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 08-CV-1813<br>) Judge Der<br>)<br>) Magistrate Judge Cox<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF GORDON E. SMITH

I, GORDON E. SMITH, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct and based upon personal knowledge:

1. I am a General Chairman of the American Train Dispatchers Association ("ATDA"). ATDA is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of the Soo Line Railroad Co. ("Soo") working in the class or craft of Train Dispatcher. I am the ATDA General Chairman responsible for providing representation for Soo Train Dispatchers.

2. I am submitting this declaration in connection with motion of the Brotherhood of Maintenance of Way Employes Division/IBT for dismissal of the complaint that the Soo has filed against BMWED in this case.

3. I have read a declaration submitted in this case by Assistant Vice President Labor

1

Relations and Human Resources-US Canadian Pacific Railway Co. Cathryn Frankenberg in which she stated that members of her staff have received "feedback from officials from other unions regarding their hearing that BMWED is planning a job action against Soo. These include communications a General Chairman for the American Train Dispatchers Association who represents Soo employees..." Frankenberg Declaration p. 6 paragraph 18(iii).

4. As the ATDA General Chairman for Soo Train Dispatchers, I categorically deny the statement made by Ms. Frankenberg in her declaration at p. 6 paragraph 18(iii); and I state that I did not speak to Ms. Frankenberg, or any member of her staff, or provide "feedback" to her or any member of her staff, saying that BMWED was or is planning a strike or other job action against Soo. I further state that there is no other ATDA General Chairman who represents Soo employees.

I, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct and based upon personal knowledge.

July 25, 2008
Date

Gordon E Smith